IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

MARCUS B. GORDON                                                                              PLAINTIFF

VS.                                                                       CIVIL ACTION NO. 5:04CV224DCB-JCS

WARDEN PETTIFORD, ET AL.                                                             DEFENDANTS

REPORT AND RECOMMENDATION

I.  INTRODUCTION

This cause is before the undersigned on the Motion of the Defendants Michael Pettiford, Scott P. Fisher, Dr. Anthony J. Chambers and Carol Beasley to Dismiss, or in the alternative, for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff Marcus Gordon opposes the motion, and the undersigned, having considered the parties' memoranda and submissions, concludes that the motion is well taken and should be granted.

II. FACTS AND EXHAUSTION

The facts, construed in favor of the plaintiff, a former inmate at FCI-Yazoo City, as the non-moving party, are as follows.  At FCI Yazoo City, the Cubicle Sanitation Standard prohibits inmates from resting underneath their cover on their beds during working hours (7:30 A.M. to 4:00 P.M. Monday- Friday), unless he has received medical authorization, i.e., a top blanket permit.  The permit is required to be posted on a bulletin board in the inmate's cubicle.

Many years prior to his incarceration in the federal system, plaintiff sustained an injury to his left arm when he was hit with a baseball and also received a shot gun blast to his right leg, this injury has resulted in more than seven surgeries.  On account of these injuries, plaintiff "suffers severe pains in joints and areas described above moreso [sic] during cold months but just as severe and painful during periods of cold air from unit airconditioning [sic]."  On June 19,

2003, per plaintiff's earlier request, defendant Beasley, a physician's assistant examined Gordon. During the examination, Gordon requested a permit to use a top blanket, so that he could be warm while resting on the bed in his cold cubicle. Beasley denied the request, telling Gordon that "Dr. Chambers had advised all the PA's [] that Assistant Warden Fisher, per Warden Pettiford, did not want the Medical Department issuing 'any permits' to allow covering with the top or extra blanket during work hours."

Dissatisfied with Beasley's denial, immediately upon leaving Beasley's office, Gordon spoke to Dr. Newland, who had been his "primary" doctor while incarcerated at FCI-Yazoo City. Gordon asked for Newland's assistance in gaining a permit. According to the complaint, Dr. Newland returned with plaintiff to Beasley's office and "advised Beasley that he was also aware of the directive however, this was not to be an excuse for denying inmates with a medical necessity." Dr. Newland issued Gordon a permit to use the top blanket during his periods of chronic pain from his disabilities. The top blanket permit was set to expire on June 18, 2004.

Gordon apparently enjoyed the use of his top blanket undisturbed until August 2003. Then, on August 13, 2003, during an inspection, Warden Pettiford told Gordon that his permit was "no good" because he (Pettiford) had instructed the medical staff not issue permits for top blanket use. The next day, on August 14, 2003, Pettiford advised Gordon that if his medical problems were "that bad," he could be transferred to Florida. At about the same time, one of the facility's counselors removed the "top blanket" permit from Gordon's bulletin board where it was required to be posted. Despite the absence of a posted permit, plaintiff used or attempted to use his top blanket and was informed by staff that its use was not permissible. At Gordon's insistence, on August 19, 2003, he was seen by Dr. Chambers. Dr. Chambers noted plaintiff's complaints of pain in his legs, feet and left arm and based on his evaluation, and decided to

continue plaintiff on tylenol, revoke his top blanket permit and increase his dosages of Elavil, which had been prescribed to treat Gordon's chronic pain.[1]  On October 3, 2003, Dr. Chambers formally rescinded the June 19, 2003 top blanket permit.

The court's September 28, 2005 opinion found that while two of his four claims had not been exhausted, Gordon had demonstrated exhaustion with regards to his top blanket claims, found in counts one and two of the complaint.  By these counts, plaintiff seeks to hold defendants Pettiford, Fisher, Chambers and Beasley liable for a conspiracy to violate his rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, et seq., the Rehabilitation Act, 29 U.S.C. § 794 , et seq., and the Eighth Amendment of the constitution.

## II. DISCUSSION

Defendants Pettiford, Fisher, Chambers and Beasley seek dismissal of Gordon's top blanket claims, asserting, among other things, that plaintiff's putative ADA and Rehabilitation Act claims are not viable and that, at its heart, plaintiff's eighth amendment claim is merely a dispute as to whether a top blanket was medically necessary.  For his part, plaintiff urges that he has sufficiently alleged and provided proof in support of claims under both the ADA and Rehabilitation Act, as well as his eighth amendment claim so as to defeat the defendant's motion.  Based on the following, the undersigned disagrees and recommends that plaintiff's remaining claims be dismissed.

### A. ADA AND REHABILITATION ACT CLAIMS

As previously stated, Gordon asserts that these defendants violated the ADA, specifically the provision which prohibits discrimination against the disabled by a public entity.  See 42

---

[1] More specifically, Elavil is an antidepressant drug.  Per the notes on an August 7, 2003 evaluation by defendant Chambers: "Pt on Elavil 50g [] for pain mgnt."

U.S.C. §§ 12131-32.  However, because the definition of "public entity" does not include the federal government, but instead refers only to state and local governments, see 42 U.S.C. § 12131(1)(A)-(C), courts have concluded that Title II of the ADA does not apply to the BOP.  See Arawole v. Heimanway, 2005 WL 659133, *1 (N.D. Tex.,March 22, 2005) (citing Crowder v. True, No. 97-C-7427, 1993 WL 532455, at *5 (N.D. Ill. Dec. 21, 1993), reconsid. granted in part, 845 F. Supp. 1250 (1994), aff'd, 74 F.3d 812 (7th Cir. 1996)); see also Sarvis v. United States, 234 F.3d 1262 (2nd Cir. Oct.19, 2000) (unpublished).  The undersigned likewise concludes that the plain language of the statute precludes application of its provisions to the Bureau of Prisons, an executive agency of the federal government.  Thus, plaintiff's claim is due to be dismissed.

Morever, assuming arguendo that the ADA did cover the BOP, the undersigned is persuaded by further authority holding that individuals may not be sued under the provisions of Title II of the ADA.  See Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n. 8 (8th Cir.1999).  It follows then that because the individual defendants in this action, all BOP employee at the time of the complained of incident are not subject to liability under Title II of the ADA, this claim is due to be dismissed.

Gordon's putative claim under the Rehabilitation Act is likewise fatally flawed.  Section 504(a) of the Rehabilitation Act, 29 U.S.C. § 794(a), provides that no qualified individual with a disability shall be excluded from participation in, denied benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance, or activity conducted by any executive agency.  As Gordon correctly points out, the Rehabilitation Act does provide for monetary damages for "any act or failure to act by any recipient of Federal assistance or Federal provider."  29 U.S.C. A. § 794a(a)(2).  However, the Supreme Court held in Lane v. Pena, 518 U.S. 187 (1996), that Congress's waiver of sovereign immunity in this section applied

only to the "narrow category of § 504(a) violations committed by federal funding agencies acting as such-that is, by Federal provider[s]," and did not reach "programs or activities conducted by an executive agency." Lane, 518 U.S. at 193. Accordingly, Gordon's claims for monetary damages under the Rehabilitation Act for alleged discrimination under any program or activity against the BOP are barred by sovereign immunity. Moreover, even were the BOP not shielded, the Fifth Circuit has held that a defendant may not be sued in his or her individual capacity under the Rehabilitation Act. Lollar v. Baker, 196 F.3d 603, 609 (5th Cir. 1999) (concluding that plaintiff could not sue individual employee under the Rehabilitation Act). Thus, Gordon's Rehabilitation Act claims against these individual defendants fail and dismissal is recommended.

## B. EIGHTH AMENDMENT CLAIM

Relief is available under § 1983 for denial of medical care if an inmate "proves that there was 'deliberate indifference to [his] serious medical needs.'" Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir 1995) (quoting Estelle v. Gamble, 429 U.S. 97, 104, (1976) and citing Farmer v. Brennan, 511 U.S. 825 (1994) (establishing subjective definition of "deliberate indifference"). "However, a disagreement between an inmate and his physician concerning whether certain medical care was appropriate is actionable under § 1983 only if there were exceptional circumstances." Id. (citing Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) ("Unsuccessful medical treatment does not give rise to a § 1983 cause of action."). A defendant may rebut a prisoner's allegation of indifference by showing "[m]edical records of sick calls, examinations, diagnoses, and medications." Id.

## 1. INDIVIDUAL DEFENDANTS

### A. DEFENDANT CHAMBERS

Initially, the undersigned assumes as did the defendants, that plaintiff's allegations of chronic pain constitutes a serious medical condition. This being said, it is the undersigned's opinion that plaintiff has failed to show that the defendants were deliberately indifferent to this condition. Specifically, although Dr. Newland initially determined that a top blanket was appropriate treatment for Gordon's chronic pain, defendant Chambers, after his later evaluation, concluded that it was not medically necessary and voided the permit for its use. Despite plaintiff's contention otherwise, a disagreement between the physicians at the institution does not transform plaintiff's claim into one of constitutional import. See Snipes v. DeTalla, 95 F. 3d 586, 590 (7th Cir.1996) (noting that physician disagreement in treatment alone will not support a constitutional violation); and Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.) (plaintiff's showing of nothing more than a difference of medical opinion' as to one course of treatment over another insufficient to establish deliberate indifference) (quotations omitted). The court additionally observes that although Chambers rescinded the top blanket permit, in his effort to treat Gordon's chronic pain, he increased plaintiff's dosage of Elavil, which had been prescribed for pain management. This is to say, that Gordon's complaints of pain were not dismissed by Chambers, although he chose not to prescribe the treatment desired by Gordon.

### B. DEFENDANT BEASLEY

Plaintiff's allegations against Defendant Beasley (who had not yet been served with process) demonstrate only that she denied him a top blanket on orders from defendant Chambers, who had, according to plaintiff, indicated that their use was to be curtailed. Ultimately, however, plaintiff suffered no harm (constitutional or otherwise) from this decision, as her denial was immediately overturned by Dr. Newland and he was permitted to use his blanket for another six weeks.

### C. DEFENDANT PETTIFORD

Similarly, the fact that defendant Pettiford directed that plaintiff's top blanket permit removed from his cubicle does not, in the undersigned's opinion, demonstrate deliberate indifference. Only days after this incident, plaintiff was examined by defendant Chambers and the blanket was determined to be unnecessary. This brief "interference" with plaintiff's course of medical treatment, while perhaps unadvisable, does not evince "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," as necessary to impose liability under the eighth amendment. McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir.1997); See Doe v. Dallas Independent School District, 153 F.3d 211, 219 (5th Cir.1998) ( "The deliberate indifference standard is a high one. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity.").

### D. DEFENDANT FISHER

Plaintiff has not alleged, much less shown, that defendant Fisher was in any way personally involved in the incidents of which he complains, i.e. the removal of his top blanket permit and the revocation of the same. Instead, Gordon's allegations show only that Fisher implemented the sanitation standard prohibiting resting under a top blanket during working hours; that sometime following defendant Pettiford's removal of the permit, Fisher directed him to discontinue resting under his top blanket, and that a year prior to the incident he overheard Fisher comment "although inmates are allowed to sleep during working hours, there's nothing in policy that says [they] have to be comfortable." These allegations come far short of showing Fisher's personal participation in the violations set out in the complaint, and accordingly,

liability may not be found on the basis of Fisher's personal participation in the incident.

Furthermore, in the absence of allegations or proof of overt personal participation, supervisory liability under § 1983 may be found only if "supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is " 'the moving force of the constitutional violation. " Thompkins v. Belt, 828 F.2d 298, 304-05 (5th Cir. 1987) (internal quotations and citations omitted).  Here, plaintiff argues that the "top blanket" policy was implemented to deny medical treatment to the permanently disabled among the prison population.  In order to impose liability on Fisher, whom the undersigned assumes is an official policy maker, and whom was not alleged to have participated in the confiscation of his permit, plaintiff must show that "he knew the ["top blanket" policy] was so deficient as to expose prisoners to substantial risk of significantly unmet serious medical needs- *i.e.,* was unconstitutional-and failed to properly attempt to correct it, *and* unless his action or inaction in this respect caused [Gordon's] injuries." Id.  Significantly, the "existence of a constitutionally deficient policy cannot be inferred from a single wrongful act." Id.  In the case subjudice, plaintiff has not averred that this policy adversely affected other disabled inmates.  In fact, plaintiff's proof tends to show that he was the only inmate who had such a permit.

Additionally, as the permit was deemed to not be medically necessary six days after its removal from Gordon's cubicle, it is difficult to conclude that either the policy or its removal exposed plaintiff to any substantial risk of an unmet serious medical need.  Accordingly, as plaintiff has failed to establish either personal or supervisory liability against Fisher, the undersigned recommends that the claims against him be dismissed.

2. CONSPIRACY CLAIM

Lastly, in addition to the somewhat more specific allegations against the defendants, plaintiff makes an overarching claim of conspiracy among these defendants to violate his rights under the ADA, the Rehabilitation Act and the Eighth Amendment.  "A plaintiff's complaint must allege facts sufficient to show an actual violation of a right protected under <u>Bivens</u> [], and actions taken in concert by the defendants with the specific intent to violate that right.  <u>Hannah v. Fleming</u>, 2003 WL 23949751, *4 (N.D.Tex., Dec. 4, 2003); <u>see</u> also <u>Villanueva v. McInnis</u>, 723 F.2d 414, 418 (5th Cir. 1984) ("Yet, it remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient.").  In the present case, as set forth above, plaintiff has failed to demonstrate an actual violation of this Eighth Amendment right.  Accordingly, his conspiracy claim lacks merit and the undersigned recommends dismissal.

<u>Conclusion</u>

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions and recommendations within ten (10) days after being served with a copy of the Report and Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. <u>Douglass v. United Services Automobile Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

Respectfully submitted, this the  21st    day of June, 2006.


S/ James C. Sumner
UNITED STATES MAGISTRATE JUDGE