```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                     WESTERN DIVISION
```

MARCUS B. GORDON, SR                                              PLAINTIFF

VS.                                CIVIL ACTION NO. 5:04cv224-DCB-JCS

WARDEN M. PETTIFORD, ET AL.                                      DEFENDANTS

### ORDER ADOPTING REPORT AND RECOMMENDATION IN PART AND GRANTING OBJECTION IN PART

This cause is before the Court on the plaintiff's Objection to Magistrate Judge James C. Sumner's Report and Recommendation of June 21, 2006 [**docket entry no. 36**], which recommends that this action be dismissed. Having reviewed the recommendations of the magistrate judge, the specific objections thereto, and the government's response to those objections, the Court finds and orders as follows:

### PROCEDURAL HISTORY

Marcus B. Gordon, Sr. brought this <u>Bivens</u> action against the following Yazoo City Federal Correctional Institute ("FCI") personnel: (1) Warden Michael Pettiford, (2) Associate Warden Scott Fisher, (3) Clinical Director Anthony Chambers, M.D., (4) Nurse Carol Beasley, (5) Supervisor of Education Gerald Bratcher, and (6) Teacher James Horchler.[1]  Gordon alleges in his complaint that the defendants violated the Americans with Disabilities Act, the

---

[1] The claims against Defendants Bratcher and Horchler were dismissed by a previous order [docket entry no. 32].

Rehabilitation Act, and the Eighth Amendment to the United States Constitution by depriving him of a "top blanket permit."  On December 23, 2004, the defendants filed their Motion to Dismiss or, in the Alternative, for Summary Judgment [docket entry no. 13].  On June 21, 2006, Magistrate Judge James C. Sumner issued a Report and Recommendation [docket entry no. 36], wherein he recommends that the action be dismissed.  The plaintiff has filed a timely objection to the R&R [docket entry no. 37], and the government has responded [docket entry no. 38].

## FACTS[2]

Many years before his federal incarceration began, the plaintiff sustained a shotgun blast to his right leg and a separate, baseball-related injury to his left arm.  Gordon has undergone seven surgeries to correct these injuries, and he alleges in his complaint that he "suffers severe pain in [his] joints" when his arm and leg are exposed to the cold air which comes from an air conditioner.  On June 19, 2003, Gordon requested a "top blanket permit" from FCI Nurse Beasley so that he could be warm while resting in his cold cubicle during "work hours."  Unless given permission by an FCI medical staff member, inmates are not allowed to rest underneath their bed's top blanket between the hours of

---

[2]Inasmuch as this suit is postured as a Rule 56 motion for summary judgment, all disputed facts, along with all reasonable inferences, must be viewed in the light most favorable to the nonmovant.

-2-

7:30 a.m. – 4:00 p.m., Monday – Friday.  (See M. Dismiss, Ex. 2.) Pursuant to a directive issued by Warden Pettiford which called for a moratorium on top blanket permits, Nurse Beasley denied the request.  Immediately after leaving Nurse Beasley's office, Gordon spoke with an FCI doctor, Rolando Newland.  Dr. Newland, while aware of Warden Pettiford's directive, nevertheless found that the top blanket permit was a "medical necessity," and he issued Gordon a permit, which was scheduled to expire one year later on June 18, 2004.[3]

    The plaintiff enjoyed the use of his top blanket during work hours until August 13, 2003.  During an inspection Warden Pettiford allegedly told Gordon that the permit was "no good," and on the following day, Pettiford ordered a prison counselor to remove the permit from the plaintiff's cell.  Accordingly, the plaintiff has been deprived of the use of his top blanket during work hours ever since.  On August 19, 2003, five days after the permit was removed, Gordon was examined by Clinical Director Chambers.  Dr. Chambers noted the plaintiff's complaints of chronic arm and leg pain.  In an effort to quell the plaintiff's chronic pain, Dr. Chambers prescribed an increase in Gordon's dosage of pain medication; however, Chambers also revoked the plaintiff's top blanket permit. The formal rescission of the permit was not entered until October

---

[3]Dr. Newland instructed Gordon to post the permit on the bulletin board in his cell.

3, 2003.

Aggrieved by the loss of his top blanket permit, the plaintiff exhausted his administrative remedies and filed this Bivens action alleging violations of the Americans with Disabilities Act, the Rehabilitation Act, and the Eighth Amendment. Judge Sumner recommends that each of these claims be dismissed.

## DISCUSSION

### I. Standard of Review

Within ten days after being served with a copy of a magistrate judge's report and recommendation, either party may file written objections with the district court. See Fed. R. Civ. P. 72; 28 U.S.C. § 636. The district court is then required to make a *de novo* review of all portions specifically objected to by the objecting party. 28 U.S.C. § 636. "The district court is not, however, required to reiterate the findings and conclusions of the magistrate judge," nor is it required to hold a separate hearing simply because the magistrate judge did so. McClendon v. Walker, 2006 WL 3780206, *2 (S.D. Miss. December 20, 2006); Fed. R. Civ. P. 72 (advisory committee note 1983). Those portions of a report and recommendation that are not specifically objected to may be adopted by the district court so long as the recommendation was not clearly erroneous or contrary to law. Meredith v. Cain, 2005 WL 1400453, *1 (E.D. La. June 2, 2005); Fed. R. Civ. P. 72 (advisory committee note 1983). See also Battle v. U.S. Parole Comm'n, 834

F.2d 419, 421 (5th Cir. 1987).

## II.  Standard for Summary Judgment

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).[4]

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue as to a material fact actually exists. Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994). To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation." Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993). The nonmoving party must "do more than simply show that there is

---

[4] A contested fact is "material" when it has the potential to change the outcome of the case. Ginsburg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue is "genuine" if "the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Id.

some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-movant must "designate specific facts showing the existence of a genuine issue for trial." Anderson, 477 U.S. at 250. "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Id. at 252. Moreover, the nonmoving party must make a showing sufficient to establish the existence of an essential element of its case, an element on which it will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law. When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment. Anderson, 477 U.S. at 255. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper where the court merely believes it unlikely that the nonmovant will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647,

651 (5th Cir. 1962). By contrast, summary judgment for the moving party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party. Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. ADA and Rehabilitation Act Claims

The ADA and Rehabilitation Act portions of Judge Sumner's R&R were not specifically objected to by the plaintiff; therefore, those sections will be reviewed for clear error. Inasmuch as Title II of the ADA does not provide a cause of action against agencies or employees of the federal government, Judge Sumner's recommendation that the ADA claim be dismissed with prejudice is hereby adopted as the finding of this Court. Marlin v. Alexandre, 2006 WL 2088012, *5 (W.D. La. June 23, 2006). Similarly, the Rehabilitation Act claims against the Bureau of Prisons ("BOP"), and BOP personnel, are not cognizable. Lane v. Pena, 518 U.S. 187, 192-95 (1996); Lollar v. Baker, 196 F.3d 603, 609 (5th Cir. 2005); Arawole v. Hemingway, 2005 WL 1630013, *2 (N.D. Tex. July 7, 2005).

### IV. Eighth Amendment Claims

Gordon claims that Warden Pettiford, Associate Warden Fisher, Dr. Chambers, and Nurse Beasley conspired to violate his Eighth Amendment right to be free from cruel and unusual punishment while incarcerated. The plaintiff also alleges that each of these

defendants individually violated his Eighth Amendment right. Inasmuch as Gordon has failed to offer any proof beyond the general, conclusory allegations of conspiracy in his complaint, the defendants are entitled to summary judgment on Gordon's Eighth Amendment conspiracy claim.  See McAfee v. Fifth Circuit Judges, 884 F.2d 221 (5th Cir. 1989) (stating that conclusory allegations which lack reference to material facts are not sufficient to state a claim of conspiracy under Section 1983 or Bivens).

The Eighth Amendment to the United States Constitution proscribes prison officials from inflicting unnecessary and wanton pain on inmates.  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).  "Deliberate indifference to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain'." Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006), citing Hill v. Dekalb Reg. Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994).  See also Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  The United States Supreme Court has stated that deliberate indifference may be manifested "[1] by prison doctors in their response to the prisoner's needs or [2] by prison guards in intentionally denying or delaying access to medical care or intentionally interfering

with the treatment once prescribed." Estelle, 429 U.S. at 105. Moreover, "regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983 [and Bivens]." Id.

The Fifth Circuit instructs district courts to use a twofold analysis when analyzing Eighth Amendment claims: (1) under the objective prong of the analysis, the plaintiff must show that he was exposed to a substantial risk of serious harm, and (2) under the subjective prong, the plaintiff is required to show that the defendants were **actually** aware of the substantial risk to the plaintiff, yet consciously disregarded it. Gobert, 463 F.3d at 345; Lawson v. Dallas County, 286 F.3d 257, 262 (5th Cir. 2002). The subjective component requires the plaintiff to show that the prison official acted with deliberate indifference, which can be shown by evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for serious medical needs." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985), quoted in Gobert, 463 F.3d at 346.

The plaintiff in this case has put forth sufficient evidence to show a triable issue of fact with regard to the objective prong. Gordon provided evidence that Dr. Newland found the top blanket permit to be medically necessary as treatment for Gordon's chronic leg and arm pain. As previously mentioned, a "serious medical

need" is one for which medical treatment has been prescribed. Gobert, 463 F.3d at 345 n.12.  See also Mills v. Fenger, 2006 WL 3793374, *3 (2d Cir. Dec. 15, 2006) (slip copy) (stating that factors used to determine what constitutes "serious medical condition" include whether "a reasonable doctor or patient would find [the condition] important and worthy of comment or treatment; the presence of [the] medical condition significantly affects an individual's daily activities; or the existence of chronic and substantial pain.").

The deliberate indifference or subjective prong must be evaluated separately for each defendant.

A.   Nurse Beasley

The plaintiff's initial request for a top blanket permit was made to Nurse Beasley on June 19, 2003.  There is no proof in the record concerning whether Nurse Beasley conducted an examination of Gordon or otherwise considered Gordon's request; however, it is undisputed that Nurse Beasley denied Gordon's request.  It is also undisputed that Gordon received a top blanket permit from Dr. Newland within mere minutes of Nurse Beasley's denial. Consequently, even if Nurse Beasley acted with deliberate indifference to Gordon's serious medical needs when she denied the permit, any constitutional infirmity was *de minimis* in nature. Accordingly, Nurse Beasley is entitled to summary judgment on the plaintiff's Eighth Amendment claim.

B.  <u>Assistant Warden Fisher</u>

Gordon alleges in his complaint, and then states in his attached affidavit, that Assistant Warden Fisher was the conduit through which Warden Pettiford issued his moratorium on top blanket permits. (Aff. Gordon, ¶ 4.)  As stated by the plaintiff, Pettiford's directive to the FCI medical staff **did not prevent** the plaintiff from receiving a permit. (Aff. Gordon, ¶ 6.)  It is therefore irrelevant whether Fisher instructed the medical staff to deny top blanket permits.  The gravaman of this action is not the denial of the top blanket permit; rather, it is the removal of the medically prescribed permit.  Gordon alleges that Warden Pettiford ordered the top blanket permit to be removed.  Gordon failed to allege any facts which suggest that Fisher was personally involved in the permit's removal.  Inasmuch as Gordon has not shown that Fisher was personally involved in the permit's removal, Fisher is entitled to summary judgment on Gordon's Eighth Amendment Claim. <u>See</u> <u>Guerrero-Aguilar v. Ruano</u>, 118 Fed. Appx. 832, 833 (5th Cir. 2004) (affirming dismissal of Eighth Amendment claim due to plaintiff's failure to establish defendant's personal involvement).

C.  <u>Dr. Chambers</u>

Gordon alleges that "Dr. Chambers was intentionally deliberately indifferent in failing to ACT according to his profession in preventing physical pains and injuries to Plaintiff by the Warden and [Assistant Warden] Fisher's actions." (Compl.

-11-

7.)  To create a question of fact regarding deliberate indifference by a medical official, the plaintiff must provide evidence showing that the "official knew of and disregard[ed] an excessive risk to inmate health and safety." Stewart, 174 F.3d at 534. Liability under the Eighth Amendment does not attach simply because the medical doctor was negligent or committed malpractice. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). Moreover, a plaintiff's disagreement with a doctor's diagnosis does not give rise to a constitutional tort. Boettner v. Raimer, 122 Fed. Appx. 711, 714 (5th Cir. 2004). Likewise, "[a] doctor's failure to follow the advice of another doctor suggests nothing more than a difference in opinion as to the appropriate method of treatment under certain circumstances, and is not evidence of deliberate indifference." Flores v. Okoye, 196 Fed. Appx. 235 (5th Cir. 2006), citing Stewart, 174 F.3d at 535.

   The undisputed record reveals that Dr. Chambers examined Gordon on numerous occasions. The medical records establish that Dr. Chambers noted the plaintiff's complaints of chronic pain. The record also shows that Dr. Chambers prescribed Gordon pain medication in an effort to treat the plaintiff's chronic pain. These examinations and treatments make clear that Dr. Chambers did not disregard the plaintiff's serious medical needs. Accordingly, Dr. Chambers is entitled to summary judgment on the plaintiff's Eighth Amendment claim.

D.   <u>Warden Pettiford</u>

The majority of the allegations contained in Gordon's complaint concern alleged wrongdoing by Warden Pettiford. With regard to the Eighth Amendment claim, Gordon contends that Pettiford committed a constitutional tort when he ordered the removal of the plaintiff's top blanket permit. As previously mentioned, Dr. Newland found the permit to be a medical necessity for Gordon on June 19, 2003. On August 14, 2003, Pettiford ordered the permit's removal, thereby preventing Gordon from resting under his top blanket during work hours. It was not until five days later on August 19, 2003 that Dr. Chambers found the top blanket permit to be medically unnecessary. In his report and recommendation, Judge Sumner found that this five-day period was too brief to constitute a violation of the Eighth Amendment; therefore, Judge Sumner recommended dismissal of Gordon's claim against Pettiford.

A prison official's intentional interference with prescribed medical treatment may give rise to a finding of deliberate indifference, and consequently, to an Eighth Amendment violation.[5]

---

[5] <u>See</u> <u>Montgomery v. Pinchak</u>, 294 F.3d 492 (3d Cir. 2002) (holding that defendant's denial of plaintiff's prescription medication gave rise to Eighth Amendment claim); <u>Koehl v. Dalsheim</u>, 85 F.3d 86 (2d Cir. 1996) (reversing trial court's dismissal of plaintiff's Eighth Amendment claim which alleged that prison official denied plaintiff of prescription glasses); <u>Payne v. Lynaugh</u>, 843 F.3d 177 (5th Cir. 1988) (reversing district court's dismissal of plaintiff's Eighth Amendment claim where plaintiff alleged that defendant deprived plaintiff of prescribed oxygen

Estelle, 429 U.S. at 105. The plaintiff has provided evidence that Warden Pettiford was aware of the plaintiff's chronic pain. Moreover, the plaintiff has alleged facts sufficient to show that Pettiford deprived the plaintiff of the medically necessary permit without first having the medical necessity of that permit reevaluated by an FCI physician. Likewise, the plaintiff put forth evidence that he was forced to endure severe chronic pain for five days without either pain medication or his top blanket to quell the pain.[6] The proof put forth by Gordon shows the existence of a genuine issue of material fact sufficient to survive a motion for summary judgment; accordingly, with regard to Warden Pettiford, the plaintiff's objection to Judge Sumner's report and recommendation must be granted.

Moreover, Warden Pettiford is not entitled to Qualified Immunity. "A Court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the

---

equipment); Lopez v. Peterson, 2006 WL 1748273 (E.D. Cal. June 22, 2006) (denying defendant's motion for summary judgment where plaintiff alleged that defendant deprived him of medically prescribed shoes).

[6]See Trujillo v. Tally, 2005 WL 1847175, *3 (D. Idaho Aug. 3, 2005) (finding that plaintiff being forced to endure physical pain for five days without medical care was not *de minimis* under the Eighth Amendment); Atkins v. Orange County, 372 F. Supp. 2d 377, 400 (S.D.N.Y. 2005) (holding in excessive force Eighth Amendment case that plaintiff's suffering of severe pain for three to five days was more than *de minimis* injury). See also Sealock v. Colorado, 218 F.3d 1205 (10th Cir. 2000) (holding that plaintiff's suffering, which was caused by a heart attack, was not *de minimis* even though it lasted only hours rather than days).

light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Siegert v. Gilley, 500 U.S. 226, 232 (1991), quoted in Saucier v. Katz, 533 U.S. 194, 201 (2001). If the plaintiff's allegations, taken as true, would violate a constitutional right, "the next, sequential step is to ask whether the right was clearly established" at the time the challenged conduct occurred. Saucier, 533 U.S. at 201. To determine if a right is clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987), quoted in Saucier, 533 U.S. at 202. This inquiry must be evaluated in the specific factual context of each particular case. Brousseau v. Haugen, 543 U.S. 194, 199 (2004) (per curiam). If the particular right violated was clearly established, the next step is to determine "whether the conduct of the defendant was objectively unreasonable in light of that then clearly established law." Felton v. Polles, 315 F.3d 470, 477 (5th Cir. 2002), quoted in Tarvers v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005).

As explained at length *supra*, Gordon has alleged the violation of a clearly established constitutional right, i.e., the Eighth Amendment right to be free of intentional interference with prescribed medical treatment. Accordingly, the Court must determine whether Pettiford acted unreasonably when he deprived the

-15-

plaintiff of his top blanket permit without first having Gordon reevaluated by a medical professional.

Warden Pettiford ordered Gordon's top blanket permit to be removed **before** Dr. Chambers rescinded the permit and prescribed the alternative treatment (pain medication) for Gordon's chronic pain. The sequence of events in this case is the linchpin. If the top blanket permit had been removed **after** Dr. Chambers conducted his examination of Gordon and found the top blanket permit unnecessary, Gordon would not have an Eighth Amendment claim. See supra Section IV, C. One must ask, why would Warden Pettiford order the prescribed permit to be removed without first ordering a medical examination? Gordon enjoyed the use of his top blanket during work hours between June 19, 2003 and August 14, 2003. Even if the next available examination was not until August 19, 2003, what legitimate penalogical interest was furthered by Pettiford's decision not to wait for the medical examination? Warden Pettiford has not provided the Court with the reasons for his decision; consequently, Warden Pettiford has failed to show that his actions were not objectively unreasonable. Thus, at this summary judgment juncture, Warden Pettiford is not entitled to qualified immunity on the plaintiff's Eighth Amendment claim.

## CONCLUSION

The defendants are entitled to summary judgment on Gordon's ADA, Rehabilitation Act, and Eight Amendment conspiracy claims.

-16-

Defendants Fisher, Beasley, and Chambers are entitled to summary judgment on Gordon's Eighth Amendment claims.  Warden Pettiford, however, is not entitled to summary judgment on Gordon's Eighth Amendment claim, nor is he entitled to qualified immunity.  Accordingly,

IT IS HEREBY ORDERED that the Report and Recommendation [**docket entry no. 36**] is **ADOPTED IN PART** and **REJECTED IN PART.**

IT IS FURTHER ORDERED that the Objection to the Report and Recommendation [**docket entry no. 37**] is **GRANTED IN PART** and **DENIED IN PART.**

IT IS FURTHER ORDERED that the defendant's Motion to Dismiss, or, in the alternative, Motion for Summary Judgment [**docket entry no. 12**] is **GRANTED IN PART** and **DENIED IN PART.**

IT IS FURTHER ORDERED that the plaintiff's ADA and Rehabilitation Act claims are **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED that the plaintiff's Eighth Amendment conspiracy claims are **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED that the plaintiff's Eighth Amendment claims against Defendants Fisher, Beasley, and Chambers are **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED that Warden Pettiford's Motion for

Summary Judgment on Gordon's Eighth Amendment claim is **DENIED**.

SO ORDERED, this the   28th   day of   February  , 2007.

                                             s/ David Bramlette     
                                        UNITED STATES DISTRICT JUDGE